Honorable Robert D. Claybrook, presiding. Please be seated. Your Honor, this is the second case of the day. This is the second case of the day. Good morning, Your Honor. Good morning, Your Honors. Good morning. Deborah Lovie from the Exoneration Project on behalf of the appellant, Mark Downs. This court, the post-conviction court, the appellant and the State are all in agreement on two key points. The first is that this conviction was reliant on the testimony of Reuben Davila. And the second is that Davila was a profoundly unreliable witness. In the words of the post-conviction court and the State, he was thoroughly and exhaustively impeached. It was ineffective assistance of appellate counsel not to raise the insufficiency of the evidence. And reversal is warranted. You want to talk first about how you can avoid the forfeiture of issues raised in a brief? Of course, Your Honor. And raised judicata, the kind of a blended issue? Okay. Well, and they are separate issues because I firmly believe raised judicata doesn't apply because it was not raised below. It could have been raised. Raised judicata placed an issue that could have been raised as well. Well, and that's why it's raised as ineffective assistance of counsel. Counsel should have raised it.  And this is framed as ineffective assistance of appellate counsel for not raising it. And that avoids any raised judicata problem. Does the State cite Jones for the proposition that you should not be allowed to raise it and that we don't have authority to allow you to raise it here? How do you respond to that argument? Oh, you absolutely have authority. There are a slew of cases that talk about when you have ineffective assistance of appellate counsel, when appellate counsel fails to raise an issue that would have been meritorious, that that's the definition. That's quintessential ineffective assistance of appellate counsel. And so it's framed in that way to avoid any raised judicata problem. Had appellate counsel raised this issue, it was meritorious. It would have prevailed below. It should have been raised. It never has in all of the appeals that this Court has heard. Well, appellate counsel was focused on post-trial assistance of counsel and mistakes that were made during the Crankville hearing, et cetera. Oh, absolutely. I don't mean it as a condemnation. It's understandable that they missed the issue, right? Oh, I don't mean it as a condemnation of any prior counsel. And as this Court knows, I've argued the unreasonableness of my own colleagues. I understand how these mistakes were made, but it is a tragic mistake compounding what was already a tragic crime. Your position is that the defendant's appellate rights were never really fully vindicated. He was never given the opportunity to argue these points. Correct. Since dating back to Downs II, this Court has been expressing very serious concerns about the sufficiency of the evidence. And Mr. Downs has never had the opportunity for this Court to hear, was there sufficient evidence of guilt? And our position is there absolutely wasn't. Even the State has conceded that there can be. Would you agree that's a different issue than what we addressed in Downs II? Downs II was the instruction issue, and we were concerned that the jury may have found the defendant guilty on a standard of less than reasonable doubt. That's a different issue than sufficiency of the evidence. Would you agree? Oh, absolutely. Clearly a different issue. This Court ruled strictly on the jury instruction issue. In doing so, it did express its very serious concerns about the sufficiency of the evidence, but that issue wasn't before the Court, and that's the ineffectiveness of counsel that we're arguing. Had that issue been presented to the Court, this Court could have addressed it squarely, and instead of reversing for a new trial, would have just outright reversed, which is the remedy we're seeking at this point. Would you agree that the case law is clear in Illinois that even the uncorroborated testimony of an accomplice is sufficient to convict so long as the jury agrees that the proof was beyond a reasonable doubt? It certainly can be. It is in no means though sacrosanct. There are reversals of convictions, and this is the rare case where we're suggesting that the evidence does warrant reversal. This isn't just an accomplice witness who points the finger at them. This is an accomplished witness who has been incentivized in a truly unprecedented way, paid $39,000, given a pass to come back from Mexico, given a free pass on this murder and an execution-style murder. This is also a witness who is uncorroborated by anything. The physical evidence suggests only one set of footprints. There's never been any eyewitness or any evidence suggesting any corroboration for this witness except so the only evidence of guilt is this tremendously incentivized testimony. And then we also have the very unusual circumstance of the jury asking a question, you know, is 60% guilt enough? And not ever really getting a word that, no, that isn't enough because. Well, the Supreme Court addressed that issue and reversed us. And so we cannot quibble with Supreme Court rulings. And I acknowledge that. There was no jury instruction error, but the underlying concern of, you know, this timing of the way the verdict came down was deeply concerning. Well, let me ask you this. And in your brief you cite to On Lee versus the United States where the court, and you quote this paragraph or this section, the use of informants, accessories, accomplices, false friends, or any other betrayals of which are dirty business may raise serious concerns about credibility. But the court goes on to say and talk about robust cross-examination and impeachment. And that's what we have here, robust cross-examination and impeachment. And the United States Supreme Court said that we think the administration of justice is better served if the stratagems such as we have here are regarded as raising not questions of law but issues of credibility. The issues of credibility were resolved after robust cross-examination and impeachment of that law. And the jury brought the testimony. And juries make mistakes. I mean, we have hundreds of DNA exonerations that tell us that juries do make mistakes. In this particular case, both the state and the court below have acknowledged that this witness was so thoroughly and exhaustively impeached that he had literally, their argument was he had no credibility with which are other issues in post-conviction that any further impeachment of de Villa would have been de minimis because he's already been so thoroughly impeached. He was impeached by the detectives who said, you know, that he admitted to disposing of the gun, that he admitted he had the guns. He was, you know, impeached by the two witnesses at trial who said he confessed in front of them. I understand that this is an unusual remedy and that in many cases we don't, you know, jury verdicts stand and they should stand. But there are exceptions. You're asking us to essentially reweigh the evidence, though. That's, I mean. This court, there are cases where the jury verdicts get overturned. There absolutely are cases where murder jury verdicts get overturned. It is a rare thing, but it is something that should be done in some instances. And the reason why it's so important in this instance is because of, while the Supreme Court found no jury instruction error, there was a really concerning thing that did happen with this jury, which is they asked if they could decide reasonable doubt based on something as low as 60%. When they received an answer that was essentially a non-answer, they then forwent all of the other questions. They had asked for other evidence. They had asked for other testimony. They had expressed concern in things that they wanted to do to adjudicate. They, instead of waiting for answers to any of those other questions, just immediately came down with a verdict. That led this court to say the jury's question and timing of its verdict bolster our conviction that there's a reasonable likelihood. In fact, we believe it to be a substantial likelihood that the jury convicted the defendant by a standard less than beyond a reasonable doubt. And our standard of review is whether or not a juror, a rational jury, could conclude the defendant's guilt beyond a reasonable doubt, taking the testimony in a light most favorable to the State. Correct. And a jury is not required to accept all of the testimony from a witness. They can leave some portions of the testimony and reject other portions, right? Absolutely. And in this case, the witness is so bad that this is the case where this court should find it to be unreasonable. When you look at... When you say so bad, is there anything that was irrational about the testimony from Davila? I mean, his testimony fit the evidence, correct? It did not. There was only one set of footprints that was ever found. It didn't fit that. It didn't fit with Kenny Thomas'. It didn't fit with Solis, who said that Davila's whole motive testimony was incorrect, that Diaz was not the gang leader who could have ordered it. It didn't fit with Davila's own ex-wife, who said, who impeached him on the motive evidence. Davila was contradicted by all the other evidence. Solis testified, and I think you've cited in your briefing, Solis testified that Diaz was stripped of his role as chief months before. Correct. But he was still second in command. No, Solis was second in command. Solis' testimony said that he himself was second in command at the time that this murder happened and that he didn't order it. And Solis was so upset that he was all set to kill Davila in retaliation. So Davila admitting and bragging to people about having killed a child. At page 830 of the supplemental record, Solis is asked, in November of 1996, did Elias Diaz have a leadership position within the Ambrose Street Gang in the city of Aurora? Answer, yes. And what leader position did Elias Diaz have in the Ambrose Street Gang in November of 1996? It was second in command. I'd have to go back. I've read the record pretty thoroughly. I understand. I mean, it's confusing as to who had what role. I mean, they're testifying to events that took place years earlier. Well, and that was part of what put Mr. Downs at such a disadvantage. Twelve years later, he's trying to prove his alibi of having been a seasonal worker, you know, twelve years later, because Davila waits a decade in Mexico before he wants to come home and then secures this deal of the century in order to come back. But as for any confusion about Solis. Well, he also testified that he did it to basically purge his soul because he felt that there should be justice for Neagle's murder. He testified about committing six or seven murders. Up to ten shootings. Up to ten shootings during that time. So, you know, his soul on this one murder or two murders where he gets, you know, he gets a pass on this one. Isn't the point that the jury heard all that evidence and still agreed that the defendant was proven guilty beyond a reasonable doubt? We know the juries are very swayed by gang evidence. We know that there was a small child who was killed. This was an extremely tragic case. There was no way to hold Davila accountable. Even though he admitted and he bragged and he laughed about committing this crime, there was no way to hold him accountable because the state gave him immunity. And we know that juries sometimes feel passionate and they want somebody to pay a price. But forcing an innocent man to pay a price and serve 70 years just adds injustice to the injustice of this crime. There's no claim of actual innocence here, is there? I'm sorry? There's no claim of actual innocence. This is a claim that it was ineffective assistance of counsel to not raise that there was insufficient evidence. Has there been a case that you found in which the evidence was deemed to be insufficient solely because the primary prosecution witness received a favorable deal? There are a couple of cases cited in the brief where there was a reasonable doubt reversal of murder convictions. As to whether or not it was solely on the basis of a deal, I don't believe those cases are that situation. I would posit, though, that there's far more than just the prosecution witness got an incredible deal. This is also the prosecution witness's testimony contradicted the physical evidence. His motive was contradicted by his wife. He admitted committing the crime to several witnesses. I mean, this is far more than just he got a deal. This is he was impeached on the guns. He was impeached on disposing the guns. The state spent eight pages below arguing the ways in which this witness was impeached. He was severely impeached, far more than just he got a deal. But, boy, did he get a deal. In your brief, you cite Glossop v. Oklahoma, a case you cited that's the best. Right, the Supreme Court case. But that case, in that case, it was clear the state knew that their witness was lying. That was the essence of the reversal, right? The facts are certainly different, yes. And the case was remanded for a new trial. The court didn't reverse the defendant's conviction outright. Correct. I think there's some powerful language in there. No, it's powerful language, but it doesn't fit this case. I understand. It's hard to find the exact facts, partly because the facts of this case are so egregious, and partly because each case presents its own facts. But the Supreme Court gives us powerful language that I think would justify if this court wants to hear this issue and wants to resolve it favorably. I think, you know, there's certainly – it gives the court a basis to do the right thing here. You asked in your brief for an alternative remedy besides just reversal to send a case back for a third state hearing. Absolutely. Tell us why. Well, if this court – first of all, there are the two other issues. So if this court disagrees with me on the ineffective assistance of counsel, there are those two other issues that should be heard in an evidentiary hearing. We briefed that issue. But secondly, if this court is in any way uncomfortable doing adjudication, then I think that is – or thinks that it's a way of resolving the procedural problems, for instance, remanding it to amend the petition or remanding it to assign different counsel, there are many different ways that it could be resolved. I think the easiest, the most efficient, given that we're on appeal number seven, would be for this court to issue the outright reversal. But I would not certainly dispute other remedies if this court felt. With respect to Aquino not calling Aquino as a witness, Clement's, you know, relationship with him had ended years earlier when he represented Aquino. Absolutely. We're not arguing a per se conflict. Where's the actual conflict? To have an actual conflict, it just has to be attributable to the prior representation. So the defense counsel made a decision based on his prior representation. We're not arguing for a per se conflict, which would require simultaneous representation. But you have to show that it adversely affected his tactics. Correct. So he made a decision not to call Aquino based on his prior representation, and that's the essence of the conflict. And he didn't believe Aquino. Correct. He thought Aquino was a liar. Based on his prior representation. So that's where an evidentiary hearing could flesh out whether or not that, I mean, the basis of an actual conflict, which you have to credit here, because this is a second stage adjudication, is defect in strategy, which would be failure to call this witness. What defense attorney in their right mind would call a multiple convicted double murderer who had a prior history, at least four other felony convictions, when he has two other witnesses to say the same thing? Well, this is getting to the third stage. What would happen at the evidentiary hearing? It's strategy. Well, I understand that this isn't necessarily an issue that, particularly if you were presiding below, that will prevail on third stage, but that's not the question for this court. This court is looking at whether or not, just based on accepting the pleadings as they are, whether there should be an evidentiary hearing. You agree we look at the entire record on any claim of ineffective assistance of counsel, not an isolated decision. We look at counsel's overall performance. And we also look at his testimony at the Crankville hearing. This lawyer, Mr. Clement, had extensive experience. He tried over 100 felony cases, over 50 murders. He was one of the initial members of the capital litigation trial bar. I understand. Respectfully, though, that's the third stage adjudication. This claim might have serious problems at third stage, but that's not the question this court has to resolve today. Thank you. Thank you. Counsel. Justice Hutchinson, please. How many actual trials did Mr. Downs have? He just had one. Okay. And he chose, or counsel chose with him, trial by jury? Correct. The issues that you're raising are all what judges said and what attorneys said. Maybe the jury, as Justice Burkett has said several times, heard a lot of information and had heard it impeached, but they still chose it. The fact that a judge or attorneys, even the prosecutor says Davila is a bad witness, how is that relevant when it's the jury that made the decision? Well, jury decisions are not inviolate. They do make mistakes. And in particularly cases where you have really inflammatory situations, like a young child who's been killed, gang testimony. Juries do make mistakes, and this is a rare case where we're asking the court to find that the jury did convict without proof beyond a reasonable doubt, or to find ineffective assistance counsel for not raising that particular issue. And the timing of the jury question does suggest that they did convict without sufficient proof, and so defense counsel or appellate counsel should have raised that issue on appeal. And that raises another question. I was on the 60%, 70%, 80% appellate court decision with Justice Burkett. I don't remember who our third person was. But basically the Supreme Court told us, look, we don't give answers to those questions. We do not define it. It is defined by some greater power. But in any event, if the answer had gone back, you have, which the answer that often happens when a judge can't answer, you have all the evidence, you have the instructions, you must proceed with what you have, how would this have been different? Well, because this seems to be your point, that right after they got that answer, they just said, okay, fine, we're done. Why wouldn't the right answer for the Supreme Court have done the same thing, because that's where they were in their deliberation? I think it's the difference between sort of the two questions and the original ineffective assistance of appellate counsel. The Supreme Court held, look, this is all we can do on jury instructions. In Illinois, we don't define reasonable doubt. There was no jury instruction issue problem that happened. But that doesn't change the underlying problem in this verdict, which is when you look at it, it sure looks like the jury decided on something less than reasonable doubt. As soon as they were told in answer to that question, the response that they got, they came down with a verdict without waiting to see any of the other evidence that they were saying that they needed in order to properly adjudicate this question. And so while there's no jury instruction problem, this Court's concerns about the jury deciding this case on something far less than reasonable doubt are valid and still stand. Those were legitimate concerns. Had defense appellate counsel raised both issues, raised the reasonable doubt and the jury instruction issue, that's where this case would have come out differently. But defense appellate counsel didn't raise it in both ways. That was the ineffective assistance of counsel that's at the heart of this claim. Thank you. Any other questions? I'm done. Thank you. All right. Thank you. I have a few questions. Oh, I'm sorry. I thought you said no. No problem. I'm usually last. Anyway, you said something earlier, and I think you may have reiterated it with your answer to Justice Hutchinson, and that was is that as I understood what you said, you said something to the effect that the defense counsel was ineffective because the defense counsel didn't raise an issue regarding the testimony or the proofs. And you didn't explain what you meant by what the failure was that was the breach that caused the prejudice that supposedly caused the egg to roll and crack and create an omelet and all that other stuff. Well, and I tried to correct myself. I misspoke. It was appellate counsel's mistake, not underlying defense counsel. It was the defense appellate attorney. The appellate counsel should have raised the insufficiency of the evidence, along with the jury instruction issue. And if way back in Bounds 2, defense counsel or appellate counsel had raised both jury instruction and the insufficiency of the evidence, the outcome of that appeal would have been different. This Court expressed very serious concerns about the way in which the instruction went down and what it suggests about the jury's adjudication. The Supreme Court only addressed the propriety of the jury instruction. Nobody has ever adjudicated the sufficiency of the evidence. It should have been raised in Bounds 2, and if not in Bounds 2, in 3, 4, 5, or 6. That is an answer. I'm not sure that it necessarily illuminates things as well as I would like it to. Let me try, please. Well, you said in the latter portion of your statement, they never addressed the issue that I was trying to get to. So if they didn't address the issue I was trying to get to, then what's the point of further inquiry, at least insofar as your answer is concerned, and citing to authority? I'm sorry, I don't understand. See, I've illustrated it well enough that I've confused you just as much as I have. I am very confused.  I mean, Appellate Counsel didn't raise the issue, and that's why it never got addressed. We are arguing Appellate Counsel was constitutionally ineffective for not raising the issue so that it would have been addressed way back when, or so this Court can adjudicate it now was Appellate Counsel ineffective for not raising it. Only when some issue isn't raised, it's forfeited. Now, there is waiver of forfeiture occasionally, and then the question I'm going to ask you now is, what is the reason for why we should waive forfeiture? Respectfully, I think you're conflating the two concepts. So there's ineffective assistance of Appellate Counsel, which says Appellate Counsel was constitutionally ineffective for failing to raise an issue. So it's distinct and different from forfeiture. Appellate Counsel should raise an issue. He did not, and by failing to do so, that was an ineffective assistance. My point is, I can raise an issue. However, unless it's plain error, you have to establish prejudice. And so I'm asking you, what was the prejudice created, or was it plain error? Well, it's actually a Strickland analysis, because it's ineffective assistance of Appellate Counsel, but the prejudice is there was a meritorious issue on appeal. Had it been raised, it would have prevailed, and by not raising it, Mr. Downs continues to remain convicted. Your argument is there's a reasonable probability that the outcome would have been a reversal. Correct. One other question, there's a sub-issue of the performance of Post-Conviction Counsel. Correct. And you want to address that just briefly? Sure. So the forfeiture issue comes into play in the issue not being raised in the Post-Conviction petition below, and that's where the forfeiture problem in this case is, and that was through unreasonable representation of Post-Conviction Counsel, which allows this Court one of the many vehicles through which this Court can overlook the forfeiture. That's where the forfeiture analysis comes in is it should have been raised on Post-Conviction. It was not. So either in the interest of justice or by finding Post-Conviction Counsel unreasonable, this Court can hear the ineffective assistance of Appellate Counsel, which then brings you to the Strickland analysis. Well, Justice Burkett related the nub of what I was getting at, which you didn't answer or at least you didn't alliterate, and that was what is the basis or what is the prejudice that results from the failures that you are claiming arose? The prejudice is the failure to consider this meritorious issue that would have prevailed on appeal. And that's okay. That's the same conclusion you came to when you made your argument to Justice Burkett. My question isn't the general terminology. It is what is the evidence of an evidentiary fact that supports your position that had it been done and the facts had been presented, there would have been a reversal. In other words, what is the prejudice, not just what is the underlying facts, but let's have the syllogism that starts with the first premise and goes to the conclusion. The way ineffective assistance of Appellate Counsel cases look at that is they then shift to let's pretend that this was ineffective assistance. We're looking at an ineffective assistance of we're looking at the underlying claim. Had counsel raised the evidence is insufficient, do we think that's a meritorious issue? So if this Court disagrees with me, if this Court says the evidence was sufficient, then we're done and you move on to my other issues. But if this Court has concerns and finds actually, you know what, if they have raised that their evidence is insufficient, yes, there is insufficient evidence to support this conviction. This is the rare case that warrants reversal. Then we have ineffective assistance of Appellate Counsel because so you have the way in which it's adjudicated is you jump to that underlying issue and you decide whether or not you agree with me. Well, we never said in Downs 2 that we had a problem with the sufficiency of the evidence, and we could have because even if it hadn't been raised, we could have raised it on our own sua sponte. We did not do that. We addressed the sole issue that was raised. And that's the ineffective assistance of counsel. Had Appellate Counsel raised it, had it been briefed, had it been on everybody's radar and arguments been presented, it's my position that the outcome would have been different. If the Court disagrees with me, then I lose. But that's how you adjudicate the ineffective assistance of Appellate Counsel. Thank you. Any other further questions? Thank you. You'll have an opportunity to make rebuttal. Thank you so much. Thank you. Mr. Friedland? Thank you. Good morning. My name is David Friedland, representing the people of the state of Illinois. Can I wait until Justice Hutchinson reappears, please?  Pardon? Can I approach? Yes. She dropped down in the middle, didn't she? Yes. Check this out. They're working with her right now. I don't know how long it's going to take. I checked this out. They're working with her right now. Oh, okay. Well, that's fine. We can postpone it until she's back up. Okay. Okay. We will proceed without Justice Hutchinson's presence. I'm sure she'll be able to at least watch the video that's recorded. She may not be given the opportunity to ask questions, but at least she'll hear our erudite intellectual pontifications and will learn assiduously from the deliberate logic of this panel. So you may proceed, sir. Thank you, guys. I'm Dave Friedman on behalf of the people of the state of Illinois. I believe in this matter. Counsel, may I please the court? I'm going to start with Downs 2. We've talked a lot about Downs 2, and I'm going to go to paragraph 30 of Downs 2, where this court said – well, sorry. I just want to – There we go. So you are being heard. I'm back. Yes. Thank you. Everybody's got to be somewhere. Got to be. Yes. Okay. All right, may I proceed? Thank you. Downs 2. While the evidence presented in this case was sufficient to prove defendant's guilt beyond a reasonable doubt, we do not leave those overwhelmingly in favor of the state. People v. Downs, paragraph 30. Your Honor's pronounced. You made this finding. You had the choice, as Justice Burkett said, to reverse the conviction outright, but you didn't. It was remanded for a new trial, and then subsequently the Supreme Court, who does have the authority, the supervisory authority, to review the integrity of all the convictions, reinstated the conviction based on the question of whether or not the case had been proven beyond a reasonable doubt. The Illinois Supreme Court in this case –  Sorry. – that what the Supreme Court has done is something that we don't have the authority to overturn. Yes. I am saying that here. And so, therefore, we are preemptively controlled by what the Supreme Court did, and the argument that is being raised here is beyond our authority to grant relief. Yes. Absolutely. The Supreme Court had – this argument's not in the petition. It's just not. The petition – and there's no trial court ruling on this. There was no evidence presented below. This is an entirely new argument raised for the first time on appeal, and Justice Burkett started off by pointing out the state citation to People v. Jones that says – and the statute, the post-conviction statute, says the allegations in the post-conviction petition must be in the petition, liberally construed in the petition. This ineffective assistance of appellate counsel's sufficiency of the evidence is nowhere in the petition. There are two claims, two, which counsel did not talk about very briefly. The insufficiency of the evidence argument dominated the briefs. It dominated this argument, but it is not proper for this court. Would you agree, old Mr. Friedland, that the defendant's direct appellate rights to challenge the evidence were never vindicated? I mean, we did make the finding. I was the author. I know. Yes. We looked at all the evidence, but we did not have the benefit of argument from the defendant on the issue of whether or not the evidence was sufficient. It was just our review without the benefit of advocacy, effective advocacy from the defendant. Unless you're tossing your legal acumen under the bus, Your Honor. That's not the case. Counsel's argument is that we never had the benefit of listening to or reading an argument from the defendant on that issue. Your Honor, just moments ago said you are extremely familiar with the record. You quoted the record. I assume that everybody here is familiar with the record. If you're indicating that you could have been persuaded if counsel had only argued the insufficiency of the evidence, which you're already familiar with, I would take issue with that. I don't think the appellate advocacy, Your Honor, reviewed the evidence in the case. Everybody has agreed that Mr. Davila is a problematic witness and was impeached. And everybody has agreed that Mr. Solis was also a witness. This case does not come down to just Mr. Davila. I do want to emphasize Mr. Solis, but I do want to emphasize first the procedural bargain. Jones is the Illinois Supreme Court case. It said that there is a remedy for this, and the remedy is a successive petition. Jones said that. The Illinois Supreme Court has said that. Your Honors do not have the authority to consider remedies. And there was one exception, which they cited with De La Paz. And De La Paz says there's a rare exception that the appellate courts can consider that, and that had to do with the retroactivity of criminal issues, and that was a very novel legal issue, and it created a split in the appellate court. The specific holding in Jones was, quote, we therefore hold that the defendant may not raise the issue of improper admonishments for the first time on appeal. And the court cited its own opinion in Jones, which is also an admonishment case, not a case involving the issue of whether or not the proof was sufficient. What I would say to that is that what I believe Jones stands for, and I rely on Coleman, that it's of record claims. This is an admonishments were an of record claim. The admonishment issue was not raised in the petition, and Jones said you don't raise it. If it's not in the petition, you don't look at it. They had no remedy, but it's not to just forgive what's in the petition. The record wasn't developed below, a 50-page motion to dismiss, argument after argument, amended post-conviction petition. None of this was presented below, and it's not here properly. Was there a procedural default in that case? Was there a procedural default in this case or in Jones? In that case, the court, yeah. Yes, Jones procedurally defaulted. They didn't have it in the petition. Jones said we're not going to consider it. The appellate court erred by considering it, which is exactly what I'm submitting your honors would do if you entertain the sufficiency of the evidence case. Mostly, again, her whole argument is belied by the fact that if you do want to reach the merits, it's a meritless argument. You don't need to get to that because your honors have already said that the evidence was sufficient to prove the defendant's guilt beyond a reasonable doubt, and the Supreme Court reinstated the conviction. Ergo, they looked at the evidence and decided that this conviction should stand. English states that forfeiture and res judicata can be relaxed on issues of fundamental fairness. My understanding of English is that that's where the procedural default is not addressed in the petition. Had they raised, not ineffective, had they just raised the sufficiency of the evidence in their post-conviction petition comes before your honors without raising a plain error. Well, now you have a procedural problem because they haven't alleged ineffective assistance to the appellate counsel. That's the forfeiture that your honors can overlook. You can't overlook the fact that it's not here and that it wasn't developed. There's a slight difference. And all the cases that appellate counsel has cited in Hungary deal with the improper, I suppose second stage, the procedural defaults where the claim wasn't properly preserved. You're saying that the record supports the argument of opposing counsel, although the record does not establish perfection of the objection or the record relative to that particular issue. Do you follow what I'm saying? You have well too many records for me. No, what I'm basically saying is that there is evidence or there is a record sufficient to address the issue, but the issue was never raised as opposed to the issue was never raised and the record doesn't have sufficient indicia of a reversal for anything other than affirmance. I would agree that the record, I'll say this, I'd agree that this claim could have been brought through, and if the post-conviction petition had been amended to ineffective assistance of appellate counsel for failing to move to raise the sufficiency evidence claim on direct, I would still be standing here and I would still be saying that the issue was raised judicata. There is no question that a sufficiency of the evidence claim is an off-record claim. It was forfeited. And then you're getting into the prejudice aspect. But when it comes to when you've already said that there's a sufficiency, appellate counsel's failure to ever raise this claim on appeal, it makes perfect sense because you've already said there was sufficient evidence to convict and the Supreme Court has reinstated it. So what appellate counsel would have raised the sufficiency of the evidence claim during all the crankle inquiries and all the remands for motions for new trial? You've already said it. We've already said it. Plus the common standard weighs so heavily in favor of the state here. Then arguing that if appellate counsel were to have raised it at the time it was suggested to have been raised, it would have been a frivolous argument? Absolutely. The argument is meritless, and that's why appellate counsel probably did not raise it. I mean, I can't know that, but once you've said that the evidence was sufficient to convict, what appellate counsel is going to say, you know what, I should try sufficiency of the evidence argument here? And the Supreme Court reinstates it. Well, they might have been wrong too. I should really push this. I get it. It's a difficult case. Counsel has, these are bad people. This is a bitter pill to swallow. That Reuben Davila got a deal, and I'm sure that the state was not excited about offering Mr. Davila his deal. But let's also remember a few things, Your Honor. There were no warrants out for, I call him Davila. There were no warrants out for him when he came forward, were there? No. He came forward according to his testimony to basically clear his soul. I don't see a motive for Davila to come forward. My point is he didn't have a motive. He had no motive. Correct. But at the time, then there was later a motive that the defense used, which was the benefits that he received. He got a pass on two murders. Yes. I think the evidence speaks. Well, number one, I want to point out what I was about to start before then. I will address that, Your Honor. One, Solis came forward first. Let's not forget that. If you look at the records, Solis' testimony is 8-6, supplemental record 8-62. Solis came forward in 2006, and he gets arrested in front of his 5-year-old right after the defendant had cried and was describing the nightmares in the bullets that you go into Nico's house. Solis comes forward, and he implicates him. He didn't like that evidence shows that he hated Davila. He didn't trust him. He's a rival gang member. He didn't like him at all. If he wanted to pin it on somebody, he pins it on Davila. But he didn't. He pinned it. Now, he came forward. It's a Diaz, defendant, Davila. Those three. A half a year later, spring of 2007, is when Davila comes forward. So if we're putting all this on Davila, Davila had some sort of reality. We have to go and you have to look at Solis. Solis, the chief of the gang, and Your Honor pointed out that testimony. He's the chief. He could have put this on anybody. Let me ask you a nitpicking question. Okay. Nitpick away. In your brief, you argue that we should strike the defendant's brief due to noncompliance with 341H6. But then you don't provide examples. I didn't bring that brief up. But you forfeited that argument. You didn't bring examples of argument or misstatements of facts. So you forfeited that argument. Then respectfully, you can consider their brief. I filed my motion to dismiss their initial brief. It was dismissed. They reiterated rather than go through all of that. I decided to address the issues. In my preparation, I almost decided to be ready for that question, and I decided that that's not what this case turns on. But I withdraw my request to strike their brief in its entirety, Your Honor. But what I do want to get to is, and we've talked the entire time with my time, again, about the sufficiency of the evidence. And it's just not here. And moreover, yes, these cases happen. We have to make deals, as the state said, we have to make deals with bad people. And they had no evidence whatsoever of the at this murder. None at all. That murder was going to go unsolved. And they offered Mr. Davila an opportunity to testify. Justice, the code of silence held up here for 10 years. Ten years, the code of silence held up. Finally, it breaks when Mr. Solis is arrested. And then Davila sees that and wants to clear his conscience, and the code breaks. The whole time, the defendant, who was a low-ranking gang member, could have pointed the finger at anybody. He never did. Plus, when he was arrested only a few days after, he said, I was with Davila. So all of this stuff about in the Kringle hearing, the focus on the alibi, the focus on all these things, the sufficiency of the evidence, the defendant put himself with Davila. If we reach the merits.  What about Aquino? So, turning to those, Aquino, first of all, Aquino was already, that claim is also procedurally barred by multiple ways. It's forfeited, it's waived, it was off record, it wasn't raised on direct appeal. And further, the merits have already been adjudicated. How about Ramirez? Ramirez is a completely collateral issue that has almost zero, I would say zero bearing on this case. Ramirez, a murderer, he had zero idea who was responsible for this murder. The only thing he could do was impeach Davila on whether a meeting took place a week before the murder. At a particular apartment. Yes, at a particular apartment. Where his sister lived. Where his sister lived. And if you dig into that, there's no question that these people were involved. Whether he was living there at the time or whether his sister was living there at the time, he wasn't ever alleged to have been at that meeting, whether it was inside the apartment, outside the apartment. That completely minor collateral point has zero impact on the outcome of this trial. And that's what the trial court found. And I would submit that that ruling was correct. Aquino, the same thing. Aquino's, if you look at the substance of Aquino's affidavits, he never even aversed that Davila committed the murder by himself. He says, I shot the kid, and it was done in the intent, this is when Davila is working for the FBI trying to obtain information, presumably from Aquino. The defendant testified at the Krankel hearing that Aquino was his buddy. They were friends. Right. Aquino was known at the time, it wasn't preserved, and plus it's meritless because it doesn't go to the overall impact. May I wrap up briefly, Your Honor? Yes, you may. This is a tragic case. Ten years of procedural history, multiple appeals, and now the defendant is claiming that the evidence was insufficient to convict him. They're grasping at any straws that they can. The state here put on a case, the jury found Davila and found Solis credible, and there's no question that he was a part of this. He put himself with Davila. He put himself with the other perpetrator that night. The evidence in the common standards favors the state here. It's not even properly before, Your Honors. Your Honor should affirm this second stage dismissal. The defendant has not met the burden of a substantial violation of his constitutional rights as it occurred here. We'd ask you to affirm. And with that, I'll take any questions. Any other questions? Sue, do you have any other questions? No, thank you. Thank you for your time. Ms. Luby? Thank you, Your Honor. In Barnes 2, this court was reversing a conviction, and that's all that defense counsel had asked for. There was dicta in the court, but this court never squarely adjudicated the sufficiency of the evidence. It was never presented. It was never briefed. It was never argued. It was not on this court's radar. Normally, when we have an appeal similar to this, there is supposed to be a determination, it's almost the last sentence or the last paragraph, relating to whether or not jeopardy is attached. And so the question I have for you is, the way you phrased what you said doesn't tell me specifically whether or not you think that jeopardy is attached, and therefore you can't be retried. So when you say it was reversed or whatever, that's only half of the question. The other half of the question is, did jeopardy attach such that with the reversal, the person or the defendant can't be retried? So what I'm asking you is, or I'm telling you that your statement isn't totally complete. It shouldn't just be, especially in the context of what I've been listening to, it shouldn't be just that there was a reversal. It should be that there was a reversal and jeopardy attached, and therefore he's immune from further prosecution. And you're correct. That is not what happened. This court reversed and remanded for a new trial. My argument is that had appellate counsel raised the issue of reasonable doubt, presented it, briefed it, and done what we've done here, which is given the State an opportunity to defend the conviction, given the defendant an opportunity to say, this conviction really doesn't have enough evidence, and had the court adjudicated it then, that the outcome would have been different. And that's what we're asking the court to do here, to really take a look at this evidence and say, is this enough? I mean, is this enough to lock a man up for the rest of his life? The evidence here was terrible. The fact that the State is relying on Solis' testimony at this point. He did not get life. He got death. Seventy years, which is effectively a de facto life at this point. He's in for 70 years. And like I said, the fact that the State stands up here and tries to arrest this one on Solis' testimony tells you just how bad this evidence is. Solis was, you know, contradicted Davila about the motive. But he also was paid $8,200. He got out of his conviction. And all he has to say is that Mr. Downs cried when he talked about hearing about a child. You know, he had dreams about a child being murdered. And that the instance when Solis was going to kill Davila, that Mr. Downs tried to stop it by saying, we didn't know. I mean, that is not a murder confession. It's not even clear what he was talking about. It's an admission from which an inference of guilt may arise. Right? I mean, everybody knew there was a little boy that was killed, and the hierarchy and the gang were upset. There's absolutely no context given for that conversation. So that is one possible inference for sure. The state has conceded repeatedly, and this court has repeatedly found, that this conviction rested on deviance, presumably because what Solis had to say was so meaningless. And Solis, like I said, also contradicted Davila. Like, this conviction relied on Davila. And I would ask the court to take a real look at that evidence and to see whether it is sufficient. If I'm wrong, then I'd ask the court to adjudicate the rest of the issues. But I've been doing this for decades. I've never seen a case like this. $39,000 spent. And this you were asking in particular, you know, didn't he come, didn't Davila come out of the, you know, trying to unburn his heart. No. He was banished to Mexico. He had run to Mexico, and he wanted to come home. And all the evidence says he couldn't come home because he had confessed to this murder, and everybody knew he committed this murder. And he also had the Yepis murder, where he had executed the guy with five shots to the back of the head. He could not come home. He wanted to come home. So he secured this deal where he wouldn't be, you know, convicted of murder for either of those offenses. He'd get $39,000. The jury heard all of this. The jury heard every single bit of what you just said. Correct. And respectfully, the jury made a mistake. And the timing of the jury's questions support the fact that this jury made a mistake. And it's a tragic mistake. This was a tragic case. But I ask the Court to take a look at whether the evidence here is sufficient. The appellate counsel was ineffective for not raising sufficiency of the evidence. And, of course, if this Court disagrees with me, I'd ask for a remand on an evidentiary hearing on the other two issues. The Court may disagree with me about whether we'll prevail at that evidentiary hearing, but there's enough there to warrant one. Thank you. Thank you. Any other further questions? Sue, do you have anything else? I don't, and I've heard everything this time. Thank you. Thank you, Justice. I'd like to thank both counsel. Both were excellent today. Thank you. Thank you. There's another case on the call. We'll take a short recess.